IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RANDY NORWOOD, ) | |
| ) | |
| Plaintiff, ) | Case No. 19 CV 2899 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| OFFICER B. DEVINE, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Randy Norwood, an inmate currently in the custody of the Kane County Sheriff, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Norwood claims that two correctional officers at the Cook County Jail violated his constitutional rights by failing to protect him from an attack by a fellow inmate in May 2017. Norwood contends that defendants did not take reasonable measures to resolve the conflict when he experienced friction with a fellow detainee; he additionally asserts that the defendants idly watched without intervening after the other detainee allegedly began assaulting him.

The U.S. Marshal was unable to locate or serve defendant Devine despite documenting multiple attempts to do so. *See* R. 63, Unexecuted Return of Service. Defendant Crooms has responded to the Third Amended Complaint with a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The defendant maintains that Norwood's settlement agreement and general release in a prior lawsuit bars this current action. For the following reasons, the Court agrees and grants defendant's motion. Moreover, the Court is satisfied that Devine would be entitled to judgment on the pleadings for the same reasons the Court is finding in favor of Crooms in this opinion.

**Background**

Norwood was a pretrial detainee at the Cook County Jail at all times relevant to this lawsuit. Defendants Sam Crooms and B. Devine are (or were, at the time) Cook County correctional officers assigned to Norwood's housing tier in the jail's maximum security division.

In May 2017, Norwood heard an inmate in the cell next to him sharpening something. Norwood reported the matter to an unnamed correctional officer, but no one searched the other detainee's cell for weapons or contraband.

On May 21, 2017, Norwood and an unidentified fellow detainee had an argument. The other detainee threatened to "ice [Norwood] down" (that is, stab him). Devine watched the detainees' interaction and laughed in amusement rather than treating the quarrel seriously. Neither Devine nor Crooms took any action either to separate the two inmates or to defuse the situation.

After the encounter, Norwood went to the telephone area to retrieve his address book. As he did so, someone—presumably the inmate with whom he had argued—attacked him from his blind side.

Devine had failed to lock multiple doors prior to the assault, in violation of security protocols at the jail. Due to this omission, the assailant managed to retrieve a piece of sharpened plastic or metal from his cell. The attacker wrapped the material around his fist, which produced the effect of punching Norwood with brass knuckles.

Devine neither intervened nor radioed to fellow officers for help. He laughed again as he watched the attack unfold. Norwood believes Devine had lingering hard feelings against him at the time because the two had themselves engaged in a heated argument a few days before the attack. Crooms likewise witnessed the attack without taking any action.

The assailant's weapon pierced Norwood's skin close to an eye; he asserts that he nearly lost the eye as a result. Health care providers in the jail's dispensary provided first aid; afterwards,

Norwood was rushed to an outside hospital, where he received a tetanus shot, stitches, and other treatment.

Norwood has been left permanently disfigured because he never underwent cosmetic surgery. And to this day, he continues to experience flashbacks and post-traumatic stress. He felt unsafe for the duration of his confinement at the Cook County Jail before he was transferred to another facility.

Norwood initiated this civil rights action in April 2019.

Among his affirmative defenses, Crooms asserted that "Plaintiff released all claims complained of in this Complaint pursuant to a 'Settlement Agreement and General Release' which was executed by Plaintiff when settling one of his prior cases before this Honorable Court, captioned '*Randy Norwood v. Fauzia Khan, Thomas Dart, Sheriff of Cook County, and Cook County*,' Case No. 18 C 4890, United States District Court for the Northern District of Illinois, Eastern Division." (R. 59, Defendant's Answer and Affirmative Defenses, p. 10, ¶ 1.)

Norwood was represented by counsel when he entered into the November 2018 settlement agreement and general release as evidenced by the agreement:

> Plaintiff acknowledges that he reviewed this document with one of his attorneys and acknowledges that he understands the contents thereof, and executed this Agreement of his own free act and deed. The undersigned represent that they are fully authorized to enter into and bind the Parties to this Agreement.

(Case No. 18 CV 4890, R. 39-1, Ex. A, 11/18 Confidential Settlement Agmt. & Release ¶ 17.)

**Legal Standard**

"[T]he correct vehicle for determining an affirmative defense on the pleadings is an answer and a motion for judgment on the pleadings under Rule 12(c)." *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 632 (7th Cir. 2020). "A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6);" thus, courts "must determine whether the complaint states 'a claim to relief that is plausible on its face.'" *Gill v. City of Milwaukee,* 850 F.3d 335, 339 (7th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d

3

929 (2007)). In doing so, courts accept plaintiff's "factual allegations as true and draw reasonable inferences from them in his favor." *Taylor v. JPMorgan Chase Bank*, 958 F.3d 556, 562 (7th Cir. 2020).

**Discussion**

In his Rule 12(c) motion, defendant contends that the 2018 settlement agreement contains a general release that covers the present lawsuit. Norwood, in contrast, argues that the agreement was meant to release only the claims that were specifically referenced therein, namely, the claims in the 2018 *Norwood v. Khan* case. It is most regrettable that Norwood suffered grievous injuries in an alleged attack, but the fact remains that his previous settlement agreement bars this action for damages.

The Court has already twice ruled that Norwood's settlement agreement in Case No. 18 CV 4890 precluded him from bringing suit against Cook County Jail officials stemming from incidents that occurred prior to the execution of that agreement and general release. *See Norwood v. Dart*, Case No. 19 CV 1944 (N.D. Ill.), R. 56, Memorandum and Opinion of June 22, 2020 (Coleman, J.), and *Norwood v. Stopka*, Case No. 19 CV 6220 (N.D. Ill.), R. 80, Memorandum and Opinion of February 12, 2020 (Coleman, J.) (granting similar motions for judgment on the pleadings in another of Norwood's cases).

The Court has repeatedly considered and rejected Norwood's assertion that he did not understand that he was settling any claims beyond those raised in Case No. 18 CV 4890, the case in which he and Cook County entered the agreement. And in the Court's experience, Norwood has shown himself to be a particularly shrewd and savvy litigator in the many cases he has litigated to date, notwithstanding his *pro se* status. Indeed, even though the Court does not adopt the arguments Norwood makes in his opposing brief, the Court once again observes that the brief is well-reasoned and relatively sophisticated.

As discussed in previous orders, "[a] court's job in construing a negotiated release under Illinois law is to determine what the parties intended." *Engineered Abrasives, Inc. v. American Mach.*

4

*Prods. & Serv., Inc.*, 882 F.3d 650, 653 (7th Cir. 2018). More specifically, "[u]nder Illinois law, 'the intention of the parties controls the scope and effect of the release; such intent is determined from the language of the instrument when read in light of the circumstances surrounding the transaction.'" *Crosby v. City of Chicago,* 949 F.3d 358, 361 (7th Cir. 2020) (citation omitted). In construing the parties' intent, Illinois courts give contract terms that are clear and unambiguous their plain and ordinary meaning in the context of the contract as a whole. *Royce v. Michael R. Needle P.C.,* 950 F.3d 939, 951 (7th Cir. 2020).

In support of his argument that Norwood's 2018 settlement released the present claims, defendant points to the following paragraph of the agreement:

> Plaintiff for himself fully and forever releases, acquits and discharge Defendants, their agents, employees and former employees either in official or individual capacities, from **any and all actions,** suits, debts, sums of money, accounts and all claims and demands of whatever nature, in law or in equity**, including but not limited to** any and all claims for Constitutional, federal law or state law violations against Plaintiff, and/or any taken, damaged, disposed of, or destroyed property, and any costs accrued arising out of Plaintiff's allegations which are the subject of *Norwood v. Dart,* 18 C 4890, in the United States District Court for the Northern District of Illinois, Eastern Division.

(Agmt. ¶ 7) (emphasis added). Defendant maintains that the language "including but not limited to" indicates that the agreement was a general release discharging defendants of any and all actions, and not just the claims arising out of the 2018 lawsuit, as Norwood suggests. Indeed, under Illinois law, "the phrase 'including but not limited to,' … signals a broad release." *Darvosh v. Lewis,* 66 F.Supp.3d 1130, 1135 (N.D. Ill. 2014) (Castillo, J.). In further support that paragraph 7 is a general release is the carve-out paragraph immediately following paragraph 7 that excepted another pending lawsuit from the general release:

> Notwithstanding paragraph 7, Plaintiff may proceed with his pending lawsuit, styled as *Norwood v. Dart, et al.*, 17 C 5769, which is currently pending the United States District Court, Northern District of Illinois, Eastern Division, and nothing in this Agreement shall affect, alter or diminish in any way Mr. Norwood's rights related to that action.

5

(Agmt. ¶ 8.) In fact, Norwood is still actively litigating Case No. 17 CV 5769; according to the docket, the parties are currently exploring the possibility of a global settlement in the hope of resolving all of his multiple pending cases.

As such, Norwood's argument that he released only his claims in the *Norwood v. Khan* lawsuit is belied by the plain language in his settlement agreement and general release. As the U.S. Court of Appeals for the Seventh Circuit has observed, "[i]t would have been odd for the settlement *not* to mention the underlying suit that prompted it; the desire to dispose of those claims is what drove the parties to the bargaining table." *Crosby*, 949 F.3d at 361 (emphasis in original). That said, as the 2018 settlement agreement makes clear, Norwood agreed to do more than dismiss the claims in the *Norwood v. Khan* lawsuit. The instant lawsuit stems from events that took place in May 2017. Thus, the November 2018 settlement and general release, on its face, bars this lawsuit.

Norwood continues to insist that his retained attorney in the matter in which he executed the settlement agreement committed malpractice by not spending enough time on the case. But there is no Sixth Amendment right to effective assistance of counsel in a civil case. *See Beauty Enterprises, Inc. v. Gregory*, 825 F. App'x 378, 382 (7th Cir. 2020) (unpublished opinion) (citing *Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001)). Despite Norwood's dissatisfaction, a highly experienced attorney who specializes in prisoner civil rights litigation represented him and helped him obtain what defendant characterizes as a "sizable monetary settlement" [R. 61, Defendant's Motion for Judgment on the Pleadings, at p. 2] in a case involving delayed treatment for an abscessed tooth.

It stands to reason that such a substantial settlement went beyond the case in which the agreement was reached. But in the unlikely event that Norwood's lawyer did not take it upon himself to explain the parameters of the agreement, he could have answered any questions Norwood might have posed to him about its scope. Furthermore, if Norwood had any reservations

whatsoever about the agreement, nothing prevented him from simply withholding his signature until his questions and concerns were addressed.

In sum, under the circumstances and construing the settlement agreement as a whole, the Court concludes that the release language is broad and encompasses more than the 2018 *Norwood v. Khan* claims. The Court specifically finds that the release bars the claims raised in this lawsuit based on events that happened almost a year before Norwood signed the general release in November 2018. *See Hampton v. Ford Motor Co.*, 561 F.3d 709, 716 (7th Cir. 2009) ("a party need not enumerate the specific claims [the party] is waiving in a general release."). If the Court were to interpret the settlement agreement and general release as Norwood argues, the language "including but not limited to" would be rendered superfluous resulting in an unreasonable interpretation of the parties' intent. *See Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Serv. Group, Inc.*, 762 F.3d 673, 679 (7th Cir. 2014) (Illinois courts attempt to "give meaning to every provision of the contract and avoid a construction that would render a provision superfluous."). Because the unambiguous language in the 2018 settlement released Norwood's claims in this matter, the Court grants defendant's Rule 12(c) motion for judgment on the pleadings.

**Conclusion**

For the foregoing reasons, the Court grants defendant's Rule 12(c) motion [61]. Civil case terminated.

**IT IS SO ORDERED.**

Date: 2/22/2021

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

7